**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division – In Admiralty

**FE PARTNERS, LLC, and
FOMENTO RESOURCES USA (LLC),**

                Plaintiffs,

      v.                                    Civil Action No:    4:16cv188

**CHESAPEAKE BOAT WORKS, LLC,
CHESAPEAKE MARINE RAILWAY, LLC,
JONATHAN M. FARINHOLT, and
RICHARD L. FARINHOLT II,**

                Defendants.

**PLAINTIFF FE PARTNERS, LLC's MEMORANDUM IN SUPPORT
OF MOTION TO DISQUALIFY E. STANLEY MURPHY, ESQ.
AND DUNTON, SIMMONS & DUNTON, L.L.P. AS COUNSEL FOR
REBECCA D. LENGUA AND DEAGLE'S MARINE RAILWAY, INC., AND
MOTION TO STRIKE MR. MURPHY'S JUNE 14, 2018 LETTER TO THE COURT**

      Plaintiff, FE Partners, LLC, respectfully states the following in support of its Motion to Disqualify E. Stanley Murphy, Esq. and his firm, Dunton, Simmons & Dunton, L.L.P. ("DSD") as counsel for Rebecca D. Lengua and Deagle's Marine Railway, Inc., and Motion to Strike the June 14, 2018 letter sent to the Court:

      **I.**        **INTRODUCTION**

      Mr. Murphy has, in effect, admitted there is a conflict of interest (by requesting the consent of Plaintiffs) in his June 14, 2018 letter to the Court, and he has entered a *de facto* appearance in this matter. However, Mr. Murphy has also attempted to circumvent the requirements for making an appearance before the Court, or otherwise filing a motion or brief, by mailing the June 14, 2018

letter detailing his clients' position on the Order to Show Cause.[1] In doing so, Mr. Murphy has taken a position, on behalf of his clients, adverse to FE Partners. Moreover, the June 14, 2018 letter contains numerous inaccuracies, misstatements, and even goes so far as to criticize and malign Mr. Cantor and FE Partners, Mr. Murphy's former clients. As a result of this action, FE Partners respectfully asks the Court to disqualify Mr. Murphy and DSD, and to strike the June 14, 2018 letter from the record.

Deagle's Marine Railway, Inc. and Rebecca D. Lengua (collectively, "the Deagles") are the owners of the facility located at 548 Deagle's Road, Deltaville, Virginia, which is leased to Defendants. *See* Lease, ECF No. 45-8. Upon information and belief, the Deagles have been clients of DSD since at least 2006, when the lease was first executed. Based on the letters and notes produced in response to Plaintiffs' subpoena request, DSD began actively assisting the Deagles in matters related to Defendants' practice of hauling vessels which exceeded the railways' capacity and not properly maintaining the railways since such issues were first raised in 2007, and this representation has continued through the present day. *See* Note from Rebecca D. Lengua, attached hereto as **Exhibit A**; *see also* Correspondence, ECF No. 61-3. Indeed, Ms. Lengua was deposed earlier this year, and stated under oath that the letters sent to Defendants, starting in 2007 and continuing through 2013, regarding the marine railways were prepared with the assistance of counsel. *See* Lengua Dep. 31:4–32:8, 42:23–43:2, Jan. 19, 2018, excerpt attached hereto as **Exhibit B**. The subject matter of these letters includes, but is not limited to, Defendants' practice of hauling vessels which exceeded the railways' capacity, whether Defendants or the Deagles should pay for the damage caused to the railways by this practice, the potential shipyard customer

---

[1] Local Civil Rule 1 requires all documents filed with the Court be filed through the Electronic Case Filing System. To file via CM/ECF, an attorney must enter an appearance. Mr. Murphy has done neither.

liabilities, other legal exposures created by this practice, and who was the responsible party. *See, e.g.,* ECF No. 61-3.

During her deposition, Ms. Lengua explained at first, the Deagles' counsel was Craig Smith, a partner with DSD, and Mr. Murphy took over after the Deagles' relationship with Defendants "progressed from normal relations to strained." *Id.* at 31:4–32:8. As of the date of the Order to Show Cause, Craig Smith, using the address of DSD's offices, was still listed as the registered agent of Deagle's Marine Railway, Inc.[2] At Ms. Lengua's deposition, Mr. Murphy appeared as counsel for the Deagles, a non-party, and he, over FE Partners' objection, participated in the deposition and made objections on behalf of the Deagles, a non-party, throughout. Indeed, without a doubt, there was and is an attorney-client relationship between Mr. Murphy, DSD, and the Deagles. *See* Ex. B, 6:12–15.

In February 2015, Mr. Murphy was approached by FE Partners to serve as counsel in connection with the M/Y SEQUOIA ("the Vessel") and the dispute which arose with Defendants. *See* Cantor Aff., June 12, 2018, attached hereto as **Exhibit C**; *see also* Engagement Letter, March 13, 2015, attached hereto as **Exhibit D**. Initially, FE Partners was not advised by Mr. Murphy that DSD also represented the Deagles. *See* Ex. C, ¶ 8. When the dual representation was revealed, Mr. Murphy advised FE Partners that DSD represented the Deagles only for trust and estate matters, and there was no conflict of interest and no possibility of an adverse relationship – even though FE Partners made enquiries to him about possible litigation against the Deagles. *See id.*, ¶8–12.

Mr. Cantor's affidavit is not the only evidence of the attorney-client relationship between

---

[2] After service was made, Plaintiffs learned Mr. Smith is no longer employed by DSD. However, this appears to be a recent development, as at the inception of this lawsuit, Mr. Smith was employed by DSD.

FE Partners and Mr. Murphy.  Indeed, Mr. Murphy provided an affidavit, dated April 19, 2016, which was submitted to the Delaware Court of Chancery.  This affidavit perhaps best explains his relationship with FE Partners.  To wit, "Commencing in February 2015 and continuing to the present I have advised [FE Partners] in this action regarding a variety of litigation related matters pertaining to *Sequoia*."  Murphy Aff., Apr. 19, 2016, ¶ 2, attached hereto as **Exhibit E**.  Further, Mr. Murphy swore:

> [M]y law firm provided legal services to FE Partners relating to, among other things, lien claims of the yard where *Sequoia* is currently stored, strategies for preservation and protection of the *Sequoia*, evaluation of the railway where the vessel was hauled, risk remediation and security of the vessel, negotiations with the yard in an effort to have the vessel repaired and refloated, and general support of litigation in this Court. I also have provided state specific advice to FE Partners regarding litigation options and strategies in Virginia.

Ex. E, ¶ 6.  Thus, Mr. Murphy's affidavit indicates he provided a variety of legal services to FE Partners from February 2015 until at least April 2016, all directly related to the very same matters which gave rise to the instant litigation.  *See* Ex. E.

However, by the fall of 2016, Mr. Murphy was sending letters to FE Partners as counsel for the Deagles.  *See, e.g.*, Letter from Mr. Murphy, Sept. 30, 2016, attached hereto as **Exhibit F**. Candidly, although a conflict of interest had already arisen, the relationship between FE Partners and the Deagles appeared to be amicable at the outset of this litigation.  The Deagles had, since June 2015, allowed FE Partners to use and pay for a MetroCast cable modem in Mr. Deagle's office (adjacent to the railway) to provide broadband wi-fi coverage and a video feed for one of the two onboard video security systems protecting the Vessel, and also allowed FE Partners to place a number of fire extinguishers in an unlocked outdoor closet adjacent to Mr. Deagle's office. During the period the Vessel was under arrest, FE Partners' substitute custodian parked an RV on

the Deagles' property to monitor the Vessel.

Nevertheless, during discovery in the instant litigation, requests for further information and documents from Ventker Henderson, PLLC to the Deagles, sent via Mr. Murphy, were rebuffed and put off repeatedly. *See* Correspondence between Ms. Noonan to Mr. Murphy, attached hereto as **Exhibit G**. After no meaningful headway was made, Ms. Noonan, on August 3, 2017, issued two subpoena duces tecum to the Deagles. These subpoenas were met with outright indignation, and Mr. Murphy sent no less than three lengthy letters – in addition to phone calls and emails – on behalf of the Deagles opposing FE Partners' requests. *See* Correspondence from Mr. Murphy, attached hereto as **Exhibit H.**

In late August 2017, the Internet service for the Vessel ceased operating. FE Partners subsequently discovered that this had occurred because the cable modem located inside Mr. Deagle's office, used to monitor SEQUOIA remotely through security cameras on board the Vessel, had been unplugged. At the same time, FE Partners also learned that the outdoor closet attached to Mr. Deagle's office and used to store the supplemental fire extinguishers had been locked.

After requesting access to reconnect the wi-fi and the fire extinguisher closet be unlocked, Mr. Murphy informed FE Partners that any involvement by the Deagles with the litigation was "jeopardizing [Ms. Lengua's] relationship with a paying tenant" (CBW), and the Deagles would only reconnect the modem if FE Partners signed a release of all claims *and* reimbursed the Deagles for the legal bills – *owed to Mr. Murphy* – associated with the subpoena responses. *See* Email from Mr. Murphy, Sept. 2, 2017, attached hereto as **Exhibit I**.

When directly advised of his conflict of interest with the Deagles and FE Partners, Mr.

Murphy sent a letter detailing his position on the issue. *See* Letter from Mr. Murphy, Nov. 7, 2017, attached hereto as **Exhibit J**. Per his letter, Mr. Murphy believes the undersigned's notice to him of the conflict of interest was nothing more than "an excuse for Mr. Cantor not paying my long outstanding professional invoice for professional services to your clients," and he complained, "a conflict of interest is being interposed as an excuse for paying this long overdue bill." *Id.*

Without a doubt, Mr. Murphy entered into an attorney-client relationship with FE Partners with respect to the matter presently before the Court. *See* Ex. C, D, E, J. Mr. Murphy entered into this relationship while his firm, DSD, represented the Deagles. Now, Mr. Murphy is attempting to communicate with the Court to advocate on behalf of the Deagles and in direct opposition to the interests of FE Partners without entering an appearance or filing a motion. Rather, Mr. Murphy has sent a letter to the Court in which he insists on advocating to the Court on behalf of his client. Mr. Murphy's June 14, 2018 letter in effect acknowledges there is a conflict, but he endeavors to avoid a direct conflict by claiming he was forced to prepare a report "because of the very short response time," and to avoid a motion to disqualify or bar complaint. June 14, 2018 Letter, at 24.[3] In fact, while Mr. Murphy has been put on notice of the conflict of interest in nearly every interaction with the undersigned (Ex. B, Ex. J), the undersigned has *never* threatened Mr. Murphy with a bar complaint.

However, Mr. Murphy believes he should continue to represent the Deagles in this matter *because of his familiarity with the case* – the *same* matter in which he previously represented FE

---

[3] Mr. Murphy's excuse that his representation of the Deagles continues because there was no time to find substitute counsel fails to reflect the fact Mr. Murphy has been on notice of this conflict for over seven months. See Letter from Mr. Ventker to Mr. Murphy, Sept. 8, 2017, attached hereto as **Exhibit K**; see also Ex. J (wherein Mr. Murphy explained he continued as counsel for the Deagles due to the short response time related to the subpoenas and because he did not believe there was a conflict).

Partners, *and* in a representation directly adverse to FE Partners.  Although he believes there is no conflict, Mr. Murphy's letters (Ex. J, and the June 14, 2018 letter) miss the mark – he owed, and continues to owe, a duty of loyalty to his former client – FE Partners.  His actions during his representation of FE Partners, and the subsequent representation of the Deagles, have prejudiced FE Partners.  Now, to step in and represent the Deagles through improper letter correspondence to this Court implicates and directly violates Rules 1.6, 1.7, 1.9, and 1.10 of the Virginia Professional Rules of Conduct.  *See* Va. Sup. Ct. R. pt. 6, § II, R. 1.6, 1.7, 1.9, 1.10.  Mr. Murphy and DSD have a continuing conflict of interest, and they should be disqualified from this proceeding.

## II.    LAW AND ARGUMENT

FE Partners does not take this matter lightly; it has been severely prejudiced by the conflict of interest and conduct of Mr. Murphy.  Moreover, the undersigned bears an obligation, as a member of the bar, to bring the facts justifying the disqualification of counsel to the attention of the Court.  *See United States v. Clarkson*, 567 F.2d 270, 271–72 n.1 (4th Cir. 1977).  There is absolutely no strategic advantage to FE Partners in seeking the relief requested here.  Indeed, the instant Motion will likely further slow the process of removal of the Vessel, which is undoubtedly not FE Partners' intention.  Removal, however, cannot occur without the involvement of the Deagles, as the landlords of Defendants and the owners of the underlying property.  Defendants have indicated they cannot consent to the site modifications necessary for removal without agreement of their landlord.  In turn, the Deagles, who are ordered to Show Cause before the Court regarding these site modifications, cannot be represented by Mr. Murphy because of the conflict of interest.  Accordingly, not only are counsel for FE Partners obligated to bring the issue to the attention of the Court, but FE Partners must also seek to disqualify Mr. Murphy and his firm as

counsel.

> The Fourth Circuit's guidance on the matter of disqualification provides:
>
> In determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances "with hair-splitting nicety" but, in the proper exercise of its supervising power over the members of the bar and with the view of preventing "the appearance of impropriety," *it is to resolve all doubts in favor of disqualification*.

*Clarkson*, 567 F.2d at 273 n.3 (emphasis added). "In other words, the assessment must be made in perspective of the realities of the case." *Sanford v. Virginia*, 687 F. Supp. 2d 591, 602 (E.D. Va. 2009).

Pursuant to the Local Rule 83.1(I), this Court has adopted the Virginia Rules of Professional Conduct. *See* Local Civ. R. 83.1(I); *Audio MPEG, Inc. v. Dell, Inc.*, 219 F. Supp. 3d 563, 567–68 (E.D. Va. 2016). While the Fourth Circuit has "cautioned against the mechanical and didactic application of conflict rules," it has also emphasized that "ethical rules governing disqualification of counsel are to be applied with a view of preventing the appearance of impropriety." *Audio MPEG*, 219 F. Supp. 3d at 568 (quoting *Aetna Cas. & Sur. Co. v. United States*, 570 F.2d 1197, 1202 (4th Cir. 1978); *Clarkson*, *supra*, at 273 n.3) (internal quotation marks omitted). Furthermore, courts have a "duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar." *Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, 727 F. Supp. 2d 469, 472 (E.D. Va. 2010).

Thus, while disqualification is a "drastic step," this Court has "a non-delegable responsibility . . . to insure that nothing, not even the appearance of impropriety, is permitted to tarnish the judicial process or shake the confidence of the public in the integrity of the legal profession." *Audio MPEG*, at 568 (quoting *In re Asbestos Cases*, 514 F. Supp. 914, 919–20 (E.D.

Va. 1981)). This drastic step is appropriate in instances of an "actual or likely" conflict of interest – in other words, an imagined conflict is not sufficient. *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990) (citing *Richmond Hilton Assocs. v. City of Richmond*, 690 F.2d 1086, 1089 (4th Cir. 1982); *Aetna*, *supra*, at 1200). Accordingly, the moving party bears a "high standard of proof to show that disqualification is warranted." *Id.* (internal citations and quotation marks omitted). This burden of proof is required because a client has a free choice of counsel, and there is a concern for the loss of time and money related to a party being compelled to retain new counsel. *Id.* (internal citations omitted). However, the right to retain counsel of one's choosing is "secondary in importance" to the Court's duty to maintain the ethical standards of the legal profession. *Id.*

There are ethical standards of utmost importance to the legal profession at issue here. "[A] court should consider the pivotal confidential relationship between a party and its attorney. . . . 'It is well settled that once an attorney-client relationship has been established, an irrebuttable presumption arises that confidential information was conveyed to the attorney in the prior matter.'" *Audio MPEG, Inc.*, 219 F. Supp. 3d at 569–70 (quoting *Tessier*, *supra*, at 731). Rule 1.6 explains information is to remain confidential, and a lawyer "*shall not* reveal information protected by the attorney-client privilege." Va. Sup. Ct. R. pt. 6, § II, R. 1.6(a). This duty of confidentiality continues even after the client-lawyer relationship has terminated. *See id.*, cmt. 18. Where a conflict of interest arises, there are significant concerns related to the use and possible disclosure of client confidences.

In addition to the principles of attorney-client privilege and confidentiality, an attorney owes his or her client – whether current or former – a duty of loyalty. *See Reese v. Va. Int'l*

*Terminals, Inc.*, 894 F. Supp. 2d 665, 671 (E.D. Va. 2012) (noting "the lawyer's duty of loyalty long has precluded the representation of conflicting interests") (internal quotations and citations omitted).

An actual conflict of interest exists here, and disqualification of Mr. Murphy and his firm is warranted. Even with the high standard of proof required, after the involvement of Mr. Murphy in this proceeding, it is inconceivable that a conflict does not exist, and disqualification is the proper remedy for violations of Rule 1.6, 1.7, 1.9, and/or 1.10.

### A. Mr. Murphy's Representation of the Deagles in this Matter is a Violation of Rule 1.9; Mr. Murphy Owes a Duty of Loyalty to FE Partners, his Former Client.

Here, there is an actual conflict that cannot be cured. Mr. Murphy cannot represent the Deagles in this matter, as FE Partners is, unquestionably, a former client of Mr. Murphy and his law firm. Rule 1.9, Conflict of Interest: Former Client, states in pertinent part, "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless both the present and former client consent after consultation." Va. Sup. Ct. R. pt. 6, § II, R. 1.9(a).

The relevant analysis under Rule 1.9(a) is whether the matters at issue during the representation of the former client are substantially related to the matters at issue in the present litigation. *See Tessier*, 731 F. Supp. at 730.[4] This Court has articulated a two-pronged test which requires the movant to establish (1) that an attorney-client relationship existed between the alleged

---

[4] Tessier was decided under the Disciplinary Rules of the Virginia Code of Professional Responsibility, and in particular, Disciplinary Rule 5-105(D). This rule has since been re-codified as Rule 1:9 (a), although the current rule requires waiver by both the current and former client.

former client, and (2) that the former representation and the current controversy are substantially related. *Id.* The term substantially related "has been defined to be 'identical' or 'essentially the same'." *Id.* (internal citations omitted). It has also been explained as a question of "whether the attorney could reasonably have been exposed to client confidences in the former case." *Rogers v. Pittson Co.*, 800 F. Supp. 350, 353–54 (W.D. Va. 1992) (finding where "there was a reasonable chance that the attorney received confidences in the first matter, an irrebuttable presumption arises that confidences were exchanged") (internal citations omitted).

The Court need not look any further than Mr. Murphy's own affidavit to determine Mr. Murphy and his law firm represented FE Partners, and an attorney-client relationship existed. *See* Ex. E. Moreover, Mr. Murphy's description in paragraph 6 of his affidavit makes clear his former representation of FE Partners relates to the same matter here. *See* Ex. E, ¶ 6. Indeed, these are the *exact* same issues which gave rise to the instant litigation.

In *Tessier*, a law firm attempted to argue its previous representation involved "different time frames, different causes of action, different legal theories, and different parties." 731 F. Supp. at 731. The Court was unpersuaded by these assertions, however, because although the legal theories differed, the cases arose from "substantially similar facts." *Id.* Accordingly, this created the risk that "confidential information would pass from the former firm to the new adverse client." *Audio MPEG*, 219 F. Supp. 3d at 570 (citing *Tessier*, at 731). Here, even assuming *arguendo* that no concurrent conflict of interest existed, and Mr. Murphy could make similar arguments regarding differing time frames, parties, or differing causes of action, the fact is Mr. Murphy represented FE Partners in matters pertaining to SEQUOIA and its removal from the railway. Mr. Murphy cannot now represent the Deagles in matters pertaining to SEQUOIA and its removal from the railway,

which is the central issue in this litgation.

The commentary to Rule 1.9 also provides guidance; "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of the sides in the matter in question." Va. Sup. Ct. R. pt. 6, § II, R. 1.9 n.2; *accord Sunbeam Prods.*, 727 F. Supp. 2d at 473. Mr. Murphy could not represent FE Partners, and as his sworn statement indicates, provide "guidance on litigation options and strategies in Virginia," as well as "strategies for preservation and protection of the *Sequoia*, evaluation of the railway where the vessel was hauled, risk remediation and security of the vessel, negotiations with the yard in an effort to have the vessel repaired and refloated," and then turn and represent the Deagles in matters that have ultimately slowed the instant litigation, endangered the Vessel, and hindered its removal from the railway. *See* Ex. E, ¶ 6.

Additionally, there is no need for the Court to ascertain whether the Deagles are now technically adverse to FE Partners. *See Tessier*, 731 F. Supp. at 730 n.5 (explaining where there is no dispute the movant was a former client of the firm, the only question is whether the matters are substantially related). Nevertheless, FE Partners was forced seek an Order to Show Cause for the Deagles in the instant case, as Defendants contend they cannot agree to the removal plan without consent from the Deagles. To the extent the Deagles appear and object or seek to impose conditions to the site modifications, they are adverse to FE Partners, and FE Partners and the Deagles have opposing interests. *See Audio MPEG*, 219 F. Supp. 3d at 574.

FE Partners does not consent to or otherwise waive Mr. Murphy's representation of the Deagles in this matter. *See* Ex. C. For that matter, FE Partners never consented to even a potential conflict while Mr. Murphy's firm represented both FE Partners and the Deagles. *See id*.

Disqualification is designed to protect former clients, and a waiver is "effective *only* if there is *full disclosure* of the circumstances, including the lawyer's intended role in behalf of the new client." Va. Sup. Ct. R. pt. 6, § II, R. 1.9, cmt. 9 (emphasis added). This has not occurred here.

Even if Mr. Murphy made efforts to ensure he was acting ethically, as he has claimed, his motives are unimportant. *See, e.g.,* Ex. J. The fact Mr. Murphy believes there is no conflict of interest with FE Partners because he has "never seen anything in this case that suggests the Deagles did anything wrong" is wholly irrelevant. Ex. J. at 2. "[I]t is not for the court to consider whether the motives of counsel in seeking to appear despite his conflict are pure or corrupt; in either case the disqualification is plain." *Rogers*, 800 F. Supp. at 354–55 (internal citations and quotations omitted). There is no "hair-splitting nicety" applicable; there was an attorney-client relationship between FE Partners and Mr. Murphy, and this former representation and the current controversy go beyond a substantial relationship – it is the same matter. *Clarkson*, 567 F.2d at 273, n.3. There is a conflict of interest, and disqualification is appropriate.

      **B.**     **Mr. Murphy and DSD Violated Rule 1.7 by Representing Both the Deagles and FE Partners Without Consent.**

Although Mr. Murphy's appearance here raises a clear-cut conflict of interest as it relates to a former client, both Mr. Murphy and his law firm were faced with a concurrent conflict of interest when they endeavored to represent FE Partners *as well as* the Deagles. The history of these two relationships, and Mr. Murphy's subsequent actions, further establish precisely how FE Partners has been prejudiced by these conflicts, and how Mr. Murphy has breached his duty of loyalty to a client.

Mr. Murphy admits, and documents produced in response to the subpoena of the Deagles show, the law firm had an existing relationship with the Deagles long before Mr. Murphy began

to represent FE Partners. *See* Ex. A, B, J. As we understand, the law firm represented the Deagles in the 2006 lease agreement with Defendants, and drafted letters on the Deagles' behalf as early as 2007 when the Deagles became concerned Defendants were using the marine railways in excess of their capacity. *See id.*

When approached by FE Partners in February 2015, Mr. Murphy alleges he disclosed the firm's "relationship with the Deagles and I went to great lengths to make certain that Deagles' interests did not conflict with FE's." *See* Ex. J. FE Partners disputes the assertion Mr. Murphy disclosed the firm's existing relationship with the Deagles at the inception of the relationship. Moreover, when Mr. Murphy did disclose the relationship to FE Partners, he mischaracterized DSD's representation of the Deagles as limited to trusts and estates issues. *See* Ex. C. The fact remains that Mr. Murphy and his firm did not comply with the requirements of Rule 1.7. In pertinent part, Rule 1.7 provides a concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Va. Sup. Ct. R. pt. 6, § II, R. 1.7(a).

Although Mr. Murphy may attempt to argue there was no significant risk that his representation would not be materially limited by his responsibilities to another client, he failed to consider that his firm had extensive knowledge regarding the duties under the lease, and Defendants' actions with respect to the railways. Thus, his representation of FE Partners was limited because of the ongoing duties his firm owed the Deagles. "Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect

forecloses alternatives that would otherwise be available to the client." Va. Sup. Ct. R. pt. 6, § II, R. 1.7, cmt. 8.

Certainly, it would be reasonable to conclude there was a risk in representing both the landlord of Defendants' facility *and* FE Partners. Mr. Murphy even stated he and his firm considered this risk "before accepting the FE representation." Ex. J. Despite this consideration, Mr. Murphy accepted the representation, agreeing to file suit against the Deagles' paying tenant, a vital source of revenue for the Deagles. "The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." Va. Sup. Ct. R. pt. 6, § II, R. 1.7, cmt. 8

Moreover, in the event Mr. Murphy recognized this risk – which he appears to have done based on his claims that he "went to great lengths to make certain that Deagles' interests did not conflict with FE's" – he still failed to obtain consent from FE Partners or the Deagles, memorialized in writing. *See* Ex. J; Va. Sup. Ct. R. pt. 6, § II, R. 1.7(b). "Absent informed consent by both clients, such conflicted representation is prohibited under the Virginia Rules of Professional Conduct." *Reese*, 894 F. Supp. 2d at 673.

Nor is there any evidence Mr. Murphy formally withdrew from the representation of FE Partners. "Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so." Va. Sup. Ct. R. pt. 6, § II, R. 1.3, cmt. 4.

In addition, Rule 1.10 is implicated, as it provides "[w]hile lawyers are associated in a firm,

none of them shall represent a client when the lawyer knows or reasonably should know that any one of them practicing alone would be prohibited from doing so by Rules 1.6, 1.7, 1.9, or 2.10(e)." Va. Sup. Ct. R. pt. 6, § II, R. 1.10(a). Therefore, to the extent Mr. Murphy argues there was no concurrent conflict, as his partner, Craig Smith, represented the Deagles during his representation of FE Partners, Rule 1.10 invalidates any such argument. The premise of Rule 1.10, imputed disqualification, is "that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client." *Id.*, cmt. 2.

### C. The Appropriate Remedy Here is Disqualification and to Strike the June 14, 2018 Letter from the Record.

When the Rules of Professional Conduct are violated, there is a question as to whether disqualification is an appropriate sanction. As this Court explained in *Reese*, in cases where the movant has suffered no prejudice as a result of the conflicted representation, referral to the Virginia State Bar may be more appropriate than disqualification. 894 F. Supp. 2d at 674. Although disqualification "is a blunt device" it is appropriate in instances where the conflict (1) "undermines the court's confidence in the vigor of the attorney's representation of the client," or (2) where the attorney is "at least potentially in a position to use privileged information concerning the other side through prior representation, thus giving his present client an unfair advantage." *Id.* (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). In this case, Mr. Murphy's previous representation has resulted in significant prejudice to FE Partners, Mr. Murphy's and DSD's prior and continued representation of the Deagles undermined its representation of FE Partners, and FE Partners "expectations of loyalty" were so "cavalierly trampled" that disqualification is warranted. *Id.* (internal quotation marks and citations omitted).

The appropriate remedy in this instance is the disqualification of Mr. Murphy and DSD.

Any conflict of interest has not been waived by FE Partners. Relevant to Rule 1.9, waiver occurs *only* when both affected clients consent after consultation. In cases of concurrent conflicts, Rule 1.7 provides for a waiver of the conflict when:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) the consent from the client is memorialized in writing.

Va. Sup. Ct. R. pt. 6, § II, R. 1.7; *see also Audio MPEG*, 219 F. Supp. 3d at 567–68 (discussing the Rules of Professional Conduct and indicating the need for disqualification where a prior attorney-client relationship occurred, the interests of the present client are adverse to the movant, the matters are substantially related, and the movant does not consent) (internal citations omitted). FE Partners has never consented to or otherwise waived the conflict of interest, and it does not consent at this time.

In this matter, "the current configuration of counsel presents an inescapable appearance of impropriety." *Audio MPEG*, 219 F. Supp. 3d at 575. The Rules of Professional Conduct "aim to foster the protection of client confidences and attorney loyalty," and the conflict here puts both in jeopardy. *Id.* (internal citations omitted). Even if there has been no improper exchange of privileged information between Mr. Murphy and the Deagles, the appearance of impropriety is sufficient to disqualify Mr. Murphy and his law firm. *See id.* at 575–76. The duty of loyalty of an attorney to a client "does not detach when litigation ends." *Tessier*, 731 F. Supp. at 733. Indeed, here Mr. Murphy has actively thwarted and delayed the efforts of FE Partners to obtain discovery in this matter, significantly prejudicing the interests of FE Partners. He has offered to have his current clients reconnect the wi-fi connection – formerly used by FE Partners to consistently

monitor the safety and security of SEQUOIA – only if his former client, FE Partners, signed a release of all claims against the Deagles, and if "FE Partners reimburses legal bills incurred in responding to the recently served subpoenae [sic] . . . approximately $3,800." Ex. I. Furthermore, the June 14, 2018 letter contains a multitude of inaccurate statements, opinions, and criticisms that are largely irrelevant to this matter or so prejudicial to FE Partners that its content explicitly violates the duty of loyalty.

Additionally, although some litigants use disqualification as a tactic, FE Partners has not filed this Motion for strategic purposes, nor does this Motion provide FE Partners with any sort of tactical advantage. *See Audio MPEG*, 219 F. Supp. 3d at 571 (discussing the use of disqualification as a tactic). Indeed, FE Partners and SEQUOIA are likely to suffer further damage and delay in the removal of the Vessel as a result of this motion. However, in addition to the ethical duty of the undersigned to raise the conflict issues with the Court, FE Partners has been prejudiced by Mr. Murphy's behavior, discussed in detail *supra*.

It is readily apparent from Mr. Murphy's actions and communications that he has no interest in maintaining any duty owed to FE Partners. To now directly communicate with the Court, and to take a position adverse to FE Partners defies the Virginia Rules of Professional Conduct. Furthermore, the impropriety of Mr. Murphy's actions damages the integrity of both the Court and of the bar, and the drastic step of disqualification is appropriate in this instance. Accordingly, Mr. Murphy's, and his firm's, successive representation of the Deagles should be barred. In addition, the June 14, 2018 letter should be struck from the record.

### III. CONCLUSION

WHEREFORE, Plaintiffs respectfully request the Court disqualify Mr. Murphy and the

law firm of Dunton, Simmons & Dunton, L.L.P. from the representation of Deagle's Marine Railway, Inc. and Rebecca D. Lengua, and strike the June 14, 2018 letter from the record.

        **FE PARTNERS, LLC**,
        **AND**
        **FOMENTO RESOURCES USA (LLC)**

By:   /s/
        Of Counsel
        David N. Ventker (VSB No. 29983)
        Marissa M. Henderson (VSB No. 44156)
        Jeanne E. Noonan (VSB No. 87863)
        Ventker Henderson PLLC
        256 West Freemason Street
        Norfolk, Virginia 23510
        Telephone: (757) 625-1192
        Facsimile: (757) 625-1475
        dventker@ventkerlaw.com
        mhenderson@ventkerlaw.com
        jnoonan@ventkerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Douglas A. Winegardner (VSB No. 46570)
SANDS ANDERSON PC
Bank of America Center, Ste. 2400
1111 East Main Street (23219)
P.O. Box 1998
Richmond, VA 23218-1998
Telephone: (804) 648-1636
Facsimile: (804) 783-7291
dwinegardner@sandsanderson.com
*Counsel for Chesapeake Marine Railway, LLC*

I further certify I have, on this day, sent a copy of the foregoing via U.S. Mail to the following:

E. Stanley Murphy, Esq.
Dunton, Simmons & Dunton, L.L.P.
678 Rappahannock Drive
White Stone, VA 22578
*Counsel for Rebecca D. Lengua
and Deagle's Marine Railway, Inc.*

　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　David N. Ventker (VSB No. 29983)
　　　　　　　　　　　　　　　　　Ventker Henderson PLLC
　　　　　　　　　　　　　　　　　256 West Freemason Street
　　　　　　　　　　　　　　　　　Norfolk, Virginia 23510
　　　　　　　　　　　　　　　　　Telephone: (757) 625-1192
　　　　　　　　　　　　　　　　　Facsimile: (757) 625-1475
　　　　　　　　　　　　　　　　　dventker@ventkerlaw.com

　　　　　　　　　　　　　　　　　*Counsel for FE Partners, LLC and
　　　　　　　　　　　　　　　　　Fomento Resources USA (LLC)*